UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| LTAC HOSPITAL OF WASHINGTON/ | * | CIVIL ACTION |
| ST. TAMMANY, L.L.C. | * | |
| | * | SECTION |
| | * | |
| VERSUS | * | JUDGE |
| | * | MAGISTRATE |
| KATHLEEN SEBELIUS, IN HER | * | |
| OFFICIAL CAPACITY AS SECRETARY and | * | |
| THE UNITED STATES DEPARTMENT | * | |
| OF HEALTH AND HUMAN SERVICES | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

NOW INTO COURT, through undersigned counsel, comes Plaintiff LTAC Hospital of
Washington/St. Tammany, L.L.C. and for its Complaint for Temporary Restraining Order,
Preliminary Injunction and Permanent Injunction against Defendant Kathleen Sebelius, in her
Official Capacity as Secretary of the United States Department of Health and Human Services,
respectfully avers as follows:

**Overview**

1.

This suit seeks an injunction to preserve Plaintiff's ability to be paid by Medicare as a
long term care hospital in order to allow Plaintiff the opportunity to pursue its administrative
appeal rights before irreparable harm results from the recent unprecedented actions by the
Centers for Medicare and Medicaid Services ("CMS") when it retroactively cancelled claims it

1

previously paid for services rendered by Plaintiff between May 22, 2009 and December 31, 2009.  This order is necessary to prevent irreparable injury to the Plaintiff, its employees, and medically complex inpatients by preventing the closure of Plaintiff's long term acute care hospital ("LTCH") and thereby assuring the continuity of patient care.

2.

The order requested by the Plaintiff is directed to the Secretary of and the Department of Health and Human Services (referred to herein interchangeably as the "Secretary" or the "Defendant") who oversees CMS and its contractors.

3.

The effect of the order is to require the Defendants to: (a) honor federal law in order to allow continued reimbursement of the Plaintiff's facility as an LTCH, and (b) cease and desist from all actions to recoup the unlawfully determined and assessed overpayments caused by CMS' decision to cancel Plaintiff's prior claims while refusing to provide Plaintiff with any appeal rights, and (c) cease and desist from retroactively denying payment for Plaintiff's claims from May 22, 2009 to December 31, 2009 under Plaintiff's LTCH provider number, all as more fully described herein.

**Parties**

4.

Plaintiff herein is LTAC Hospital of Washington/St. Tammany, L.L.C. ("LTAC of Slidell"), a Louisiana limited liability company with its registered office and principal place of business in Lafayette, Louisiana;

2

5.

Made Defendant herein is Kathleen Sebelius (hereinafter, "the Secretary" or "Defendant"), in her capacity as Secretary of the United States Department of Health and Human Services and also the United States Department of Health and Human Services (hereinafter, "HHS"), the executive department overseeing CMS, the federal agency with responsibility under Title XIX of the Social Security Act to administer the Medicare program.

## Jurisdiction and Venue

6.

This Court has jurisdiction over this matter pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Medicare Statute, 42 U.S.C. §§ 1395 *et seq.*, and the Federal Question Statute, 28 U.S.C. § 1331.

7.

In some cases, 42 U.S.C. § 405 (h) bars jurisdiction under the Federal Question Statute for claims arising under the Medicare Statute.  The bar does not apply, however, whenever the application of Section 405 (h) would "not simply channel review through the agency, but would mean no review at all."  *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000).

8.

Venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391(e), because the Plaintiff's member, manager and domicile are located within this District and no real property is involved in this action.

**Statement of the Case**

9.

Defendant's actions pose a very real and imminent threat to the Plaintiff's ability to provide adequate care to its medically complex patients who are being treated for medically complex conditions.  Many of the patients are on life support, require ventilators, dialysis, feeding tubes, infusions, and wound care.

10.

This action for injunctive relief arises from Defendant's unlawful decision to retroactively change Plaintiff's Medicare payment status from LTCH-PPS at a base rate of $39,114.36 per discharge to short stay acute care hospital payment status at a base rate of $5,552.58 per discharge for the period from May 22, 2009 to December 31, 2009.  To carry out Defendant's plan it instructed its contractor, Wisconsin Physicians Service Insurance Company, Inc. ("WPS"), to cancel approximately $5.2 Million worth of claims for which Plaintiff had already been paid almost three (3) years ago.  Meanwhile, Defendant has ignored Plaintiff's requests to discuss the matter amicably and refused to provide Plaintiff *any* appeal rights in violation of Plaintiff's procedural and substantive due process rights and the time honored principle of fundamental fairness.

11.

Defendant failed to inform Plaintiff of its decision to retroactively change the hospital's payment status for more than a year and a half *after* Plaintiff provided complex, intensive and expensive inpatient hospital care to extremely ill and fragile patients requiring specialized services.  The first time Plaintiff received any notice of Defendant's unprecedented action was in Defendant's November 29, 2010 letter (attached hereto as Exhibit "A").

12.

Initially, Defendant informed Plaintiff it was permanently changing the hospital's payment status. In response, Plaintiff filed a federal complaint in this Court on December 15, 2010 requesting a temporary restraining order enjoining Defendant from taking such an unprecedented and devastating action until Plaintiff could appeal Defendant's decision (6:10 cv 01840). The injunction request was based on Plaintiff's analysis of the Defendant's decision to change the hospital's payment status estimating that it would produce a massive overpayment that would bankrupt the hospital before it had a chance to administratively appeal the decision.

13.

The Defendant opposed the injunction and argued that Plaintiff's allegations of such a large overpayment demand by Defendant were merely speculative and that this Court had no jurisdiction until Plaintiff exhausted its administrative appeals. The Defendant repeatedly argued that Plaintiff would have the ability to appeal the Defendant's actions through established administrative procedures before CMS' Provider Reimbursement Review Board ("PRRB").

14.

Upon the filing of Plaintiff's request for a temporary injunction, this Court held telephone conferences on December 15, 2010 and December 16, 2010 during which this Court made it clear to the parties that the Court agreed the dispute needed to be heard in a timely manner by the proper administrative body so that the Plaintiff's appeal rights and the Medicare patients in its hospital were protected until such time as the administrative appeal could be heard.

15.

Without any advance notice and, after more than a year has passed, Defendant, through CMS, has done *EXACTLY* what it promised it wouldn't do and what this Court attempted to prevent in the Consent Decree:  Defendant has now cancelled approximately $5.2 Million in claims from Plaintiff and still refuses to provide any meaningful appeal rights.  It has put the hospital on the verge of immediate bankruptcy and will not discuss the matter with Plaintiff or Plaintiff's representatives; nor has it provided Plaintiff with any appeal forum.

16.

A brief review of how the dispute got to this point demonstrates how arbitrarily and capriciously Defendant has applied, reinterpreted, reapplied, ignored and invented the rules as they apply to this hospital.  In every sense, Defendant has been making up the rules as it goes along and has violated every procedural and substantive due process right Plaintiff is lawfully entitled to.

**Recent Case History**

17.

Under this Court's guidance the parties entered into a Consent Agreement designed to allow CMS to conduct an internal review and also ensured Plaintiff would continue to be paid as an LTCH during this review and for an additional 30 days after the internal review was concluded.  (See Joint Motion for Stay and attached Consent Decree, both attached hereto as Exhibit B).

18.

On March 11, 2011, CMS informed Plaintiff that Defendant agreed Plaintiff was currently qualified to be an LTCH but still contended that Plaintiff was not so qualified from May 22, 2009 to December 31, 2009.  As required by the Consent Decree, CMS informed Plaintiff, "Your MAC will notify you regarding any overpayment that may have resulted for the period when your hospital was not eligible for payment under the LTCH PPS, May 22, 2009 to December 1, 2009.  *At that time, you will be given notice of all appeal rights.  See 42 USC 1395oo.*"  (March 11, 2011 CMS letter attached hereto as Exhibit C) (emphasis added).  42 USC 1395oo refers to the appeal process before the PRRB.

19.

On March 17, 2011, as requested by this Court, the parties filed a Status Report in which Defendant informed the Court of the March 11, 2011 letter and stated, "CMS has not made a determination of any overpayment from May 22, 2009 through December 31, 2009.  However, once an overpayment determination has been made, CMS will provide Plaintiff with appropriate notice.  *The notice will also include Plaintiff's rights to administratively appeal any overpayment decision.  See 42 U.S.C. §1395oo.*"  (emphasis added). (See March 17, 2011 Status Report attached hereto as Exhibit D).

20.

Several months later on October 24, 2011, this Court requested an updated Status Report. The new Status Report contained the same assurance of Plaintiff's appeal rights quoted in the first Status Report, but also includes both parties' position statement on the pros and cons resulting from dismissal of the case.  Plaintiff objected to a dismissal of the case because the undetermined overpayment would likely bankrupt the hospital and force it to close and transfer

7

fragile patients before it would have any chance to have its appeal heard by the PRRB. Defendant stated the case should be dismissed since "the only injunctive relief Plaintiff now seeks pertains to the recoupment of an overpayment that has not been determined by CMS." In other words, because no overpayment was calculated, there was no need for injunctive protection. (See October 24, 2011 Status Report attached hereto as Exhibit E).

21.

Reviewing this history shows that Defendant, through CMS, has attempted to arbitrarily, capriciously and deliberately subvert Plaintiff's appeal rights. Plaintiff objected to two main aspects of Defendant's actions and filed the request for a temporary injunction. Plaintiff objected to 1) the retroactive decision to deny Plaintiff's LTCH payment status and 2) the recoupment of the resulting overpayment. This Court sought to preserve Plaintiff's appeal rights by instructing the parties to cooperate until a final decision was made by CMS and for an additional thirty (30) days to provide Plaintiff with the opportunity to appeal any decision to the PRRB.

22.

Unable to simply do what it wanted, Defendant took actions designed to remove the case from the Court's purview by undercutting Plaintiff's arguments about the "immediate" or "imminent" threat of irreparable harm. First, Defendant conducted an "internal review" and determined that the Hospital could be qualified as an LTCH, but contrary to CMS' longstanding rule (i.e., 42 C. F. R. 412.22(d)) retroactively excluded the period from May 22, 2009 to December 31, 2009. Then, despite having all of the necessary financial data, CMS made no attempt to determine the amount of the resulting overpayment for this period so that it could

argue the case needed to be dismissed since Plaintiff could not show an immediate threat of irreparable harm from the speculative and undetermined overpayment.

23.

Because Defendant withheld any notification of the applicable overpayment, Defendant could argue there was no *immediate* threat of irreparable harm.  Consequently, this Court had no reason to maintain the suit and granted Defendant's motion to dismiss.

24.

Freed from the Court's oversight, Defendant instructed Wisconsin Physicians Service Insurance Corporation ("WPS"), a Medicare Contractor ("MAC") to cancel all of the claims filed by Plaintiff as an LTCH from May 22, 2009 to December 31, 2009.

25.

On April 2, 2012, WPS wrote to Plaintiff informing the hospital of CMS' decision and stated that it would cancel Plaintiff's claims for the 2009 time period that week.  Despite the repeated assurances made to this Court by Defendant that Plaintiff would be able to appeal the decision and despite Defendant's explicit statement in the March 11, 2011 letter that the MAC would inform Plaintiff of the overpayment and explain Plaintiff's appeal rights before the PRRB, the April 2, 2012 letter from WPS contained no overpayment determination and no notice of any appeal rights.  (See April 2, 2012 Letter from WPS attached hereto as Exhibit F).

26.

Instead of using the information Defendant has had for almost three years to determine the amount of the overpayment, Defendant instead simply instructed WPS to cancel the claims for services rendered three (3) years ago and recoup 100% of the amount due for claims by

Plaintiff for the services it is currently providing to Medicare inpatients without telling Plaintiff exactly how much will be recouped.

27.

On April 16, 2012, Counsel for Plaintiff objected to the letter from WPS and requested an explanation of its appeal rights stating, "Despite the Hospital's statutory and regulatory due process rights to appeal this decision to the Provider Reimbursement Review Board under 42 U.S.C. § 1395oo and despite CMS' recognition of these appeal rights, your letter purports to simply reprocess the claims without providing due process."  (See April 16, 2012 Letter to WPS attached hereto as Exhibit G).

28.

On April 24, 2012, after repeated phone calls to CMS were unanswered and unreturned, Counsel for Plaintiff wrote to CMS requesting a meeting to amicably discuss the matter and to determine why CMS was applying the regulation in question in an unprecedented manner to Plaintiff's hospital when Plaintiff's counsel had emails from CMS written in 2009 interpreting the regulation in exactly the manner that would not result in any disqualification of Plaintiff's LTCH payment status.  (See April 24, 2012 Letter to CMS attached hereto as Exhibit H).  CMS has not acknowledged receipt or responded to the letter.

29.

On numerous occasions in April 2012, counsel for Plaintiff called WPS requesting an explanation of how it was implementing the cancellation of claims it had already paid.  WPS explained that the claims from May 22, 2009 to December 31, 2009 would be cancelled which would leave Plaintiff with a negative balance of approximately $5.2 million dollars.  Plaintiff was instructed to submit bills as a short stay acute care hospital payments for which would be

applied to a portion of the negative balance; however, considering the average payment under the previously paid LTCH-PPS claims was nearly $40,000 per discharge and the average payment under any re-filed short stay IPPS rates is approximately $5,500, the overpayment will still be massive, just as Plaintiff claimed.   Until the negative balance is paid back in full, future payments due to Plaintiff's for hospital for services it is now rendering to Medicare patients will be withheld and credited toward the negative balance.  In other words, once WPS cancelled the claims, all payments to the hospital will immediately stop until the negative balance is fully paid thereby leaving the hospital with insufficient funds to care for the patients currently in its hospital.

30.

On April 26, 2012, WPS issued Remittance Advice showing the cancellation of the LTCH claims amounting to $5,228,993.92.  (See Remittance Advice attached hereto as Exhibit I).

31.

On May 3, 2012, WPS without citation to any law or regulation, replied to Plaintiff's April 16, 2012 letter and informed Plaintiff that it was acting upon CMS' instructions and that it had reprocessed the claims.  WPS also explained it did not believe it was depriving Plaintiff of any appeal rights since Plaintiff would be allowed to appeal "any payment matter" after claims are rebilled by Plaintiff as a short stay hospital for the period May 22, 2009 to December 31, 2009, a new cost report is refiled, and after a new notice of program reimbursement (NPR) is issued for the 2009 Period.  (See May 3, 2012 Letter from WPS attached hereto as Exhibit J).

32.

What the May 3, 2012 WPS does not say is that the reprocessing of claims, the filing of a new cost report, and the issuance of a new NPR will take an indeterminate period of time during which Plaintiff will not receive any payments whatsoever for the expensive and intensive hospital care provided to its patients without any right to appeal.  Plaintiff's hospital cannot operate without reimbursement sufficient to care for expensive medically complex services required by its patients and will therefore be forced to close long before CMS grants Plaintiff a meaningful right to appeal.

33.

Significantly, the process does not have to work this way.  WPS and CMS have had all of the information needed to determine the overpayment for almost three years.  WPS informed Plaintiff's counsel that it could determine the overpayment by processing each claim individually, but such a process is inconvenient and time consuming for WPS.  Thus, to avoid the inconvenient and time consuming process of determining the overpayment amount and thereby vest Plaintiff's appeal rights, CMS instructed WPS to simply cancel all of the claims and effectively bankrupt the hospital before its appeal rights become available.

34.

This critical point cannot be over-stated.  By not using the information at its disposal, CMS can still claim it does not know the amount of the overpayment and consequently, has no obligation to inform Plaintiff of its appeal rights.  The problem is that CMS by cancelling three (3) year old claims and creating the $5.2 million dollar negative balance means Plaintiff will not be paid anything for the treatments it is currently providing until the $5.2 Million in recoupments has been paid back.

35.

The lack of any meaningful appeal rights violates Plaintiff's due process rights under the Administrative Procedures Act and the 14th Amendment.  Moreover, it is without question that the PRRB cannot timely provide any relief for Medicare beneficiaries who will be harmed absent the requested injunctive relief.

36.

Defendant's actions will cause irreparable harm to the hospital's patients and the patients' families as the closure of the hospital will require these medically complex and fragile patients to be transferred to other facilities, provided such facilities are available and are willing to admit the patients.

37.

The patients in LTAC of Slidell satisfy LTCH inpatient hospital criteria for specialized care.  Plaintiff only treats medically complex patients, many of whom are dependent on ventilators, feeding tubes, dialysis, and other life support assistance.  LTCH patients suffer from life threatening conditions such as resistant and complicated infections which require a team approach by specialized clinicians and expensive resources such as ventilator support and long term IV anti-biotics.  Other health care facilities are not generally equipped or paid at a reimbursement rate to treat patients with such medically complex problems and, as such, will not accept these patients until these issues are resolved.  Additionally, moving such patients greatly increases the risks of further infection, esophageal damage from moving patients with breathing or feeding tubes, dislodgment of tubes, and other medical complications generally referred to as "transfer trauma".  Defendant's threat to withhold $5.2 million dollars in payments for services rendered in the past will result in the closure of the facility and will immediately threaten these patients with irreparable and wholly unnecessary harm.

38.

Defendant's arbitrary and capricious actions will cause irreparable harm to these patients and their families by seriously jeopardizing the patients' health and welfare when the hospital is forced to close.  Alternative care, if it can be found, is likely to be too distant for family members to provide support which contributes to success of treatments.

39.

Defendant's unlawful and arbitrary actions will also cause irreparable harm to the more than 160 hospital employees and staff by forcing them to look for new jobs in a troubled economic climate.

## COUNT I

## Injunctive Relief

40.

The allegations of the foregoing paragraphs are incorporated herein by reference.

41.

Plaintiff is requesting this Court issue a temporary restraining order and grant preliminary and permanent injunctive relief preventing Defendant, through CMS and its contractors, from withholding any current payments to Plaintiff as a credit against the negative balance created by the canceling of the LTCH PPS claims from May 22, 2009 to December 31, 2009 until such time as Plaintiff is able to pursue its administrative appeal rights.

42.

Defendant's unprecedented action to retroactively terminate Plaintiff's LTCH payment status from May 22, 2009 to December 31, 2009 and thereby recoup any payments made under the LTCH PPS payment system, will cause irreparable harm to Plaintiff due the fact that the

facility will be forced to close immediately.  If injunctive relief is not granted by this Court, the facility will be closed long before its PRRB appeal may be heard rendering Plaintiff's appeal rights meaningless and depriving LTAC of Slidell of its due process rights under the Administrative Procedure Act and the 14th Amendment.   As set out above, this will also cause irreparable harm to Plaintiff's patients and employees.

43.

Accordingly, Plaintiff is entitled to preliminary injunctive relief prohibiting the Defendants from cancelling Plaintiff's LTCH PPS claims for the period of May 22, 2009 to December 31, 2009 and from withholding any payments to Plaintiff's hospital due to any negative balance the Hospital may have, in order to preserve the status quo and to prevent further irreparable injury until this matter can be heard before the PRRB.

WHEREFORE, Plaintiff prays that after due proceedings:

(a)     the Defendant and her agents, and all other persons acting in concert or participation with Defendant, be temporarily,  preliminarily and permanently enjoined from classifying Plaintiff as a short stay acute care hospital subject to the Inpatient Prospective Payment System ("IPPS") for services provided from May 22, 2009 until December 31, 2009 until such time that a preliminary injunction hearing on this matter can be held; and

(b)     the Defendant and her agents, and all other persons acting in concert or participation with Defendant, be enjoined from withholding any claims or payments to Plaintiff as offsets against any negative balance and be ordered to

continue to process and reimburse Plaintiff's claims for payment until such time that a preliminary injunction on this matter can be held; and

(c)      the Court award and all further legal, general, equitable and other relief to which the Plaintiff is entitled.

Respectfully Submitted,


s/ *Michael M. Meunier*

Michael M. Meunier, T.A. (La. Bar 17056)
SULLIVAN STOLIER KOVATA KNIGHT, LC
909 Poydras Street, Suite 2600
New Orleans, Louisiana 70112
504.561.1044 – telephone
504.561.8606 - facsimile
         -and-
Michael R. Schulze (La. Bar 26505)
Stephen M. Sullivan (La. Bar 12575)
SULLIVAN STOLIER KOVATA KNIGHT, LC
1042 Camellia Blvd, Suite 2
Lafayette, Louisiana 70508
337.233.6210 – telephone
337.233.6215 – facsimile


s/ *Michael D. Skinner*

Michael D. Skinner (La. Bar 12118)
SKINNER LAW FIRM, LLC
600 Jefferson St., Suite 810
Lafayette, Louisiana 70501
337.354.3030 – telephone
337.354.3032 – facsimile


Attorneys for Plaintiff, LTAC Hospital of Washington/St. Tammany, LLC

17